Good morning, Your Honor. This is Jesse Miller for Greyhound Lines, the appellant in this case. I will reserve, I believe I have 15 minutes. I will reserve five minutes for rebuttal. May I proceed? Yes, please. Okay. Good morning. I may have pleased the court. At the outset, I would like to encourage the court to view this decision and all the briefing that you've received through the lens of a couple of items. One being the 2011 amendment to section 1442A1, that being the Removal Clarification Act. And as we've cited in our papers and other circuits have gone on to do, there's a new standard that was set forth in the 2011 amendments post the Watson decision in 2007. The most significant change was the replacement of causation with connection in the Federal Officer Removal Statute. That's set forth in Latioles by the Fifth Circuit, in Baker v. Atlantic Richfield in the Seventh Circuit, and the Third Circuit, and the Eleventh Circuit, and I believe the Fourth Circuit have followed. And why is that important? The strict bar that the district court in this case seemed to set forth for Federal Officer Removal was incorrect, even at the time the district court made that decision. And the bar is lower, even for a private corporation, which is a person under the to a federal court under 1442A1. And that's the standard. I have one clarifying question. What is the governing document in terms of the allegations? Is it your removal petition or the complaint? I tell a very different story as to Greyhound's role in all this. And I'm trying to figure out which one. I'm ultimately not sure it matters which one counts, but I'm curious as to which one you think counts. Sure. Well, the complaint, Your Honor, is part of the removal notice, and it is also addressed in our remand, our opposition to the remand. So the complaint, you beat me to the punch. I was going to ask the court to focus on some key allegations contained within the State Attorney General's report. That is their allegations regarding Greyhound supporting CBP's enforcement actions. If you're talking about that quotation, that quotation is simply a footnote, reference to some letter from the DHS entity to Greyhound. But it's not an allegation. As the truth of it, by the state, is it? I believe it is, Your Honor, and that the State Attorney General should be judicially estopped from... But he's not alleging it's true. He's just alleging that it was said. Your Honor, I disagree, both in terms of paragraph 30 of the complaint, which is on the evidentiary record at page 338. It's not just the footnote and the attachment, Your Honor. I believe that I understand... Let me tell you what my ultimate problem is here. There are two standards, two issues here with regard to the removal. One is whether you were acting simply as a regulated party, or in some sense, I would say, as an agent of the government. And the other is whether you have a viable federal defense. And it seems to me that your arguments go at each other like this, that if you win one, you can lose the other, in the sense that if you were operating only because... If Greyhound was doing what it did only because it was ordered to do it, then it has the Watson problem. It's only a regulated party. And if it was not only... And if the complaint is right, and it wasn't only doing what it was ordered to do, then I don't know what your federal defense is. So I just don't know whether the two pieces... You don't lose in one or the other. Well, I disagree with that, Your Honor. I think we need to walk through the framework of the removal statute first, because where the district court... And I recognize this is a de novo review. But where the district court stopped its inquiry was at the acting under component of the stand. Right. Okay. Well, on your version, which is that you were required to do this because of the federal statute, then how can... You weren't acting under. You were just doing what you were told to do. That's correct, Your Honor. The government told us to do it, as both the complaint reveals and also... So in that period, anybody who is told to by a police officer to get out of the car is acting under a federal agent? Or anybody whose house is searched pursuant to a warrant and lets the person in is acting under a federal agent? Well, Your Honor, I think that's a different circumstance. It's not different. It's exactly the same. No, Your Honor. Here, armed border patrol officers with canines, tactical vehicles, and paramilitary uniforms pursuant to the complaint and Mr. Page's declaration, which is in the record. I did what? I'm sorry. I didn't hear what you said. Oh, I'm sorry. Can you hear me better now? Yes, I can. According to the allegations of the complaint and Mr. Page's declaration, border patrol conducted immigration sweeps at the Spokane Intermodal. They had tactical vehicles, canines. They were armed and in paramilitary uniforms. But people come and go, and police probably will cause harm to people's houses like that all the time. So the people whose houses they're going into, who don't bar the door, are acting under the federal agent? No, that's a different circumstance, Your Honor. I agree that's... Why is it a different circumstance? Because here, the federal agents are 1357, saying that they have the ability to board and search without suspicion. Okay. But that's not the question. The question is, why are they acting under the federal agent? If they're only doing what the federal agent says they have an absolute right to do, and you have to do what I'm saying. The complaint reveals that Greyhound acted as a strategic partner with... Okay, so then you're going to the other point, which is that you were only doing what they said, but you were voluntarily cooperating. Well, if you're voluntarily cooperating, then what's your viable federal defense? Well, Your Honor... You didn't have to do it. As Atlantic... Well, there's preemption. There's a conflict... Yeah, what's the preemption defense then? That there's a conflict between 1357 and... Well, there isn't one if you weren't doing it, if you didn't have to do it, but you were doing it because you were cooperating. You're just in a non-resolvable conflict of theories, it seems to me. Well, I think the court is hitting on a key point here. Greyhound is on the horns of a dilemma, both in terms of... Subjection can be compelled silently, Your Honor. And there's both here. DHS told Greyhound they did not have a vote in the matter, that they had to comply. So this is not a matter of consent or non-consent. DHS asserted its federal power. Then on the ground, at a bus station in Spokane, Washington, at an intermodal, there are armed, essentially paramilitary forces surrounding a bus, not asking permission, telling Mr. Page to stand aside through their actions and not interfere. And as this court's federal criminal statutes that state if you interfere with an agent's performance of his duty, that's a misdemeanor or a felony, depending on what action you take. Counsel, if it's that severe, then what is the upshot or the import of the discussion of Greyhound saying in early 2020, we're not going to do this anymore? Yes, Your Honor, because DHS and Carla Provost, the former head of Border Patrol, finally announced in a memo that was leaked to the press, and you can't find it anywhere on the internet, Your Honor. I challenge you to go find it on DHS's website. It was a policy change, a clear policy change from Border Patrol's prior activities. And she no longer has a job. She resigned and was fired shortly after she authored that memo. That's the facts. Okay, so but your position then would be effectively up to that time you were acting under compulsion, either physical or legal. Indeed, after that, did you no longer allow these bus sweeps? Well, there's two types of bus sweeps. There's what's taking place at the checkpoints, but we're talking about the intermodal. So my take on it, and I'm not speaking for my judges is, yes, you're on, there is a dilemma here, potentially. But is it a dilemma that's resolvable by calling you a federal agent, as opposed to making your defense in state court, and going, if necessary, going to the Supreme Court and trying to slap down Washington for, one could say, trying to make you a scapegoat? I mean, I understand your practical problem. But does that make you an agent for these purposes? Because I think Judge Berzon raises some good questions about how do you distinguish acting voluntarily, acting under specific legal compulsion and acting under intimidation, which is really the way you couch it with the page affidavit, is simply they had guns in each Yeah, Your Honor, it's both. It's the meeting with DHS. It's DHS's public statements, which are in the record, are Greyhound's own meeting and page over a five year period in practice being at that terminal what he was subjected to. And that's why That is your defense in state court. How does that get you into federal court? Your Honor, I'm still talking about acting under. It does relate to both. You are correct that it relates to the preemption defense. And remember, Your Honor, jurisdiction doesn't depend on who is right on the merits. By making the allegations against Greyhound in the complaint, the state AG invoked federal jurisdiction. I mean, asking me to try the merits of what's true or false or what's right and wrong and make a judgment on merits on preemption is premature and unfair to my client, which does sit on the horns of dilemma. I'm sorry, I didn't understand that point. You're saying it's unfair to ask them to make a preemption argument. Now you don't have to make a preemption argument. You have to have a colorable federal defense to invoke the federal officer removal. Yes, Your Honor, but I understand as you're saying is that at this point, you're questioning the viability of the defense, which is a merit. I'm saying that if you did what you did voluntarily, then therefore you couldn't have been preempted by the statute you're relying on. And if you did what you did because of the statute, then you're not acting under the federal agent. Your Honor, that's not correct. Tell me why it's not correct. Well, as the Baker versus Atlantic Richfield decision points out, a recent Seventh Circuit decision, and it cites to Watson and Ruppel and Isaacson versus Dow Chemical. Let me read to you what the court says. The district court held that the mere assistance in the absence of a legal duty to render such aid does not bestow jurisdiction. Like the Second Circuit, we find no authority for the suggestion that a voluntary relationship somehow voids the application of the federal officer removal statute. That's exactly the situation we have here. And the district court below pointed that out. The voluntary relationship doesn't void. In fact, it might invoke acting under the federal agent, but you still need a viable federal defense. I can address that, but I understand where you're going. Perhaps you're suggesting we're talking out of both sides of our mouth. That's what I'm suggesting. I understand. Trust me. I'm not sure the government isn't also, but yes, you are. That is not Greyhound's intention, and I'm trying to clean it up for you, so to speak. All right. So explain to me how it can be, how both things can be. If one is true, the other isn't true, and vice versa. Okay. Under the colorable federal defense side of the House, Greyhound's an impossible position. If it were to comply with federal law, 1357 or otherwise, following the directions of the federal agents, whether it be voluntary or involuntary, it would stand in violation of state consumer protection laws per the Attorney General. Were we to comply with the Attorney General's consumer protection laws and interfere, obstruct, or not comply with federal law, Greyhound would be subjected to a violation of a statute, 18 U.S.C. 111, for impeding a federal officer's discharge of his legal duties, which CBP... Well, that's only true if, in fact, there was a legal responsibility to do what they say. It's only true if, in fact, there is such a legal duty, right? Well, it's true if there's a legal duty, correct, or if Greyhound believed they had a legal duty to compel. You're on. What does the belief have to do with it? The preemption doesn't depend on what you believe. We've attached to the appellant's opening brief and the notice petition reams of CBP, including legal position, asserting its authority under 1357 and the CFR to conduct zero suspicion detentions. I cite evidentiary record 171, which is a 2017 document, not the 2012 manual that we have no idea where that came from. The state AG hasn't given it to us. Zero suspicion detention, point of entries, immigration checkpoints, ramp checks, vessel document checks, DUI checkpoints, license and registration checks. This is what CBP has been asserting and directing upon common carriers like Greyhound at these bus stations for years. Now, with the beginning of the pandemic, it changed and the CBP's disappeared. Maybe I know people are traveling less and Greyhound's losing money hand over fist. And Ms. Provost's memo may have made a change. Greyhound's public statement agreeing with CBP's change. But Your Honor, there can be no doubt that even on the face of the AG's allegations that Border Patrol was employing Gestapo-like tactics at these bus stations, conducting immigration sweeps and indiscriminately picking on Latinos and other people of colors. Greyhound doesn't like it. We never have. That doesn't mean we don't have a legal duty to act and haven't been and we will give you a name you're about. Thank you very much. Thank you, Your Honor. Mr. Palazzolo. Thank you, Your Honors. And good morning. May it please the court, Lane Palazzolo on behalf of the state of Washington. Your Honors, this case is a state enforcement action in which Washington seeks to address Greyhound's longstanding practice of voluntarily allowing immigration agents on its buses to target its paying passengers without warrants and without suspicion, but also Greyhound's failure to warn and misleading those passengers about those enforcement sweeps and the associated travel risks, delays, and harms. This case has brought solely under longstanding state consumer protection and civil rights laws in his cabins to Greyhound's conduct. But notwithstanding the nature of Washington's allegations, Greyhound has sought to stretch the federal officer removal statute far beyond its plain language and its intended purpose to obtain jurisdiction where it is otherwise lacking. Your Honor, I'll go right to the point. You've all questioned counsel on the key issue, which is that Greyhound's theory of the case, what it alleged in its notice of removal, was that it had no option. It had to let agents on its buses. Therefore, Washington's claims are preempted. Certainly, Washington disagrees with that preemption argument, but in making that the basis of removal, Greyhound walked squarely into the prohibition set forth by the Supreme Court and reiterated repeatedly by the Ninth Circuit. Greyhound then ignored Watson in the remand briefing below. The district court did not and recognized that if Greyhound's version of the facts as it presents them is correct, it was not acting under a federal official. Now, that's point one. Point two, Greyhound has sought to look to Washington's allegations, recognizing that it is not itself alleging anything further. But the important point about Washington's allegations, Your Honors, is that Washington has explained in detail in its complaints, supported by CBP's own policies and practices, showing that this was a matter of consent by Greyhound. CBP has stated to the news media that it operates with Greyhound's consent when it does these searches at the Spokane intermodal station. So, yes, it is a matter of voluntary discretion, but the important point for whether Greyhound is acting under is that Greyhound was making that choice alone. It was not making, as Washington has explained in its complaint, any decision that is controlled by the federal government or directed by the federal government. Let me ask a question. So, just to be clear, did CBP agents ever ask for permission from either the bus drivers or for Greyhound to access the buses? We believe so, Your Honor. CBP has, as I noted, stated to the news media that it was operating with consent. Page certainly says they never had, you know, that he was never involved, period. They just did it. So, Your Honor, I'm well aware. Do you have any, you know, evidence or allegation other than the news media as to Greyhound's consent? Well, so what I would say about that is a few things, Your Honor. One, the news media article I reference is a statement from CBP very explicitly saying they operate with Greyhound's consent. What I would also point out, I'm sorry, Your Honor. When? When was that? That was, I believe, 2018 or 2019. When the statement was made, I would have to tell you. We don't usually base court opinions on newspaper articles. Certainly. But I still am stuck in the same place, though. Suppose if it was with their consent, then what's their, then I suppose one might say that, I understand you have a second argument, which is even if it was with their consent, they still weren't acting under the federal government. Right? Yeah. But isn't it also true that if they were acting with their consent, their preemption argument falls apart? Absolutely, Your Honor. And to the point, this is after the briefing in this case was completed, but the Superior Court denied Greyhound's preemption argument in its motion to dismiss on this basis, recognizing that if the state's allegations are true about consent, there is no preemption of the state's claim. So you're absolutely right on that point. Counsel, are we or the district court at this stage supposed to determine whether they were acting by consent or under coercion? In other words, isn't that sort of a factual matter? Doesn't it smell like a factual matter? It does, Your Honor. And the answer is that this court in the Light v. Crane case explained how the court should analyze this question. It's essentially like a 12-B-1 motion in a regular case. And that means this court will look to Greyhound's allegations and its notice of removal to decide whether as a facial matter, removal was proper, and Washington challenged the notice of removal on that basis. But also, we could raise a factual challenge, which we did, and the burden was on Greyhound to come forward with evidence, essentially like a summary judgment, as the government. What did Washington submit in support of its factual challenge? Well, Your Honor, we challenged Greyhound's allegations in its notice of removal. In terms of what Washington has submitted, there were documents attached to Washington's complaint, which counsel has noted. For example, 2012 CBP training materials, where CBP itself recognizes that it can only conduct these searches with Greyhound's permission. That's consistent with the statement CBP has made to the public that it is doing this with Greyhound's consent. Does the page declaration count at all? Is there some procedural reason for not looking at it? I mean, that's pretty specific if you look at it. So is there some reason not to look at it? There's no reason not to look at it, Your Honor. Greyhound was entitled to put it in. But it's essentially unrebutted, because it confirms much of what Washington has alleged, that these searches have been happening on Greyhound buses, that Greyhound has never told CBP that Greyhound does not consent. And so I recognize that it's there, but it doesn't show that Greyhound was acting under a federal officer. Mr. Page points out- This is a bus driver who doesn't have any idea whether the company itself has consented. So Mr. Miller seems to be arguing that why shouldn't it be enough for us judges to find that Greyhound was under the control of CBP agents, where our CBP agent appeared to have simply boarded the buses to conduct these sweeps without requesting permission? Why isn't that enough? Sure. And Your Honor, the answer is that the Supreme Court in Watson has explained what defendant was acting as essentially as a subordinate to the federal officer, the federal officer is acting as a superior. And as this court, as recently as 2020, in the Chevron decision has pointed out exactly the inquiries that the court should engage in. Was a private defendant acting as the government's agent? Here, Greyhound certainly was not acting as CBP's agent. Greyhound was not carrying out the searches for CBP. And in fact, as we have explained, Greyhound was doing something that only a private party can do. CBP cannot consent to its own searching. So at the end of the day- The second factor under the Chevron is the person is under the subjection, guidance or control of the federal officer. Is there an argument to be made? Like, it sounds like that's what Mr. Miller is arguing on behalf of Greyhound. Yes, Your Honor. And that language is speaking to where there exists an unusually close relationship. For example, a federal contractor who is following detailed specifications and acting under the direct control of their federal officer superior. As the court in Watson explained, federal prisoners are under the subjection, guidance and control of federal agents. That of language referring to subjection, guidance and control in a vacuum is not sufficient. As the court in Watson did. I'm saying in your view, then give me an example of a private party who could really take advantage of this other than, let's say, an absolute contractor. That is, if CBP can build a toll booth, a contractor building the toll booth probably is. But aside from that case, in your view, who could raise a defense when officers or agents of the government are doing things, pushing you around? They're simply have no defense, have no ability to remove rather. Correct, Your Honor. It's not that they have no defense. As you noted in your earlier questioning, Rahan has the ability to present its preemption defense in state court and to appeal it up if it does not win. The federal officer removal statute, though, exists for a rather limited purpose, an important purpose, but a limited one of allowing a federal a federal officer or those acting under them to obtain a federal forum where there's otherwise no federal jurisdiction because the well pleaded complaint rule. And so what we have here is essentially greyhound is pressing a federal preemption defense. In order to pursue that defense, it argues that it was forced to do to allow the practices to occur under Watson. That is not enough. So your answer really is that except, let's say, in the contractor case, you don't have a good of somebody who could get into federal court with the federal agent acting defense. And I can understand that it might turn out to be right. But does Watson really get you there? Watson is so different a case. You're talking about, you know, advertisers in a directly heavily regulated area. So we can take some guidance from it. But does that really solve this dilemma? Can you distinguish this situation from a D.O.T. sort of the Department of Transportation? If they say stop the bus so we can check the tires, would that make them federal agents when they stopped the bus? No, your honor, it wouldn't. Washington could sue them for not meeting the schedule. So customer says or Washington says you're not keeping to the schedule. Why are you not keeping to the schedule? The government says stop so we can check your tires. Tough luck. Is that the upshot from a federal officer removal perspective? Yes, your honor. It's not tough luck. They have a preemption defense in state court and state courts are permitted. This is just a foreign question, right? Exactly, your honor. And certainly not tough luck and he'd probably win. But that's a question is in what court? Exactly. And we agree, your honor. And I would just note with my limited time that this is important. This is a state enforcement action. I mean, isn't this all the product? And this has always been confusing to me, but it's the product of the fact that the federal question jurisdiction in federal court can't be a defense. And the reason I'm confused is because it appears that that means that the arising under language in the Constitution is being interpreted differently than the arising under language in the federal question statute, right? Because you can have a federal defense for purposes of the federal officer removal. Right? So essentially, the federal officer removal is a way to get a federal defense into federal court in a narrow range of circumstances. That's absolutely right, your honor. And the purpose for allowing that narrow range of is to ensure that federal officers when they're performing their federal duties can have defenses arising out of those duties. But what that indicates is that if Congress wanted to have a federal question jurisdiction based on their defense, it could happen. Because it must be resting on an interpretation of the Constitution that would allow a federal question defense as a basis for removal if Congress wants to do it. But Congress hasn't done as interpreted by the courts. I think that's correct, your honor, and Congress hasn't done that. And as the statute is to be interpreted, or has been interpreted by the Supreme Court, and this court, there's simply not enough here for greyhound to invoke the federal court's limited jurisdiction and prevent Washington's courts from hearing a state law enforcement. If one allowed this, you'd have a complete end run around the limitation of federal question jurisdiction. That's essentially what what has happened here, your honor, if the federal officer removal statute is construed in a way that greyhound is urging, in the extremely broad view that greyhound is urging, it would essentially gut the well pleaded complaint rule and allow a defendant pressing a preemption defense and automatic ticket to federal court when that is not permitted. Okay, your time is up. Mr. Miller, we'll give you a minute. Mr. Miller. Apologies, turning the mute back button off. The well pleaded complaint rule doesn't apply here. The fact that apply here, but the more you stretch the, the, the, the concept of who is acting under a federal engine, the more you're eating into the well pleaded complaint. Um, I agree if somebody stretches it, but greyhound is not stretching that analysis here. I mean, the purpose of the federal removal statute goes beyond the federal question issue is specifically announced by Congress. I mean, and this is a field where Congress has occupied its immigration. It's not greyhound making it up as the cases that address the purpose of federal officer removal is to prevent bias. I think you've seen in this complaint and in the argument here, the state AG is litigating the case through the newspapers. So to give you another hypothetical, somebody shows up with a warrant, OSHA warrant, uh, at a, um, a plant and says, I want to search your plant. And, um, and the company, um, says, well, I'd rather not. There are privacy interests of my employees and they say, well, you have no choice about it. Uh, let them in. And then, um, suppose somebody sues the employer for letting these people in, uh, is the employer, a federal agent or a federal acting under a federal agent? Your answer has to be yes. I mean, under your. Yes. I mean, yes. I mean, this is a highly regulated field, the OT and FM CSA occupy. That's why there's been wage and hour preemption in the state of Washington and California in this field. I mean, therefore, whenever there's an assertion of government authority, um, and somebody sees to that assertion of government authority, they are acting under the federal. No, your honor. I'm not arguing that at all. I mean, as let's see, all this pointed out to be colorable, an asserted federal defense. I'm not talking about an asserted federal defense. I'm talking about who's the federal officer. I guess I don't understand your hypothetical, but if I go to patrol agent, either through, uh, coercion, repeated activity, guns, canines, vehicles, blocking the bus. And suppose they don't do any of that. They just come in and say, we have authority to do this. Your honor, but that's not the facts of this case. What difference does it make in terms of whether they're at, seems to me the more, the more coercion, the less they're acting under the federal agent. Well, they're not exceeding their authorities because they're stated that they have it under 1357. So when Mr. Page never asked me for my permission or my consent, I'm sorry, your honor, go ahead. So what is your best case? Is it the seventh circuit case that would tell me was indeed acting under a federal officer here? What case are you pointing to? I would point your honor to Baker versus Atlantic Richfield. That's the seventh circuit case? That's the seventh circuit. Do you have anything here in the ninth circuit that you would point to? Well, Latioles is the fifth circuit. Um, the problem with Watson, it was decided in 2007 before the amendments. Since Latioles came out, all the circuits are basically falling in line and following the same standards. If we look at the Goncalves decision, which, uh, the court used here, the underlying, which is ninth circuit, the underlying logic that Goncalves applied said that it's not causation, it's connection. It's acts associated with what the federal officer is direction that directing that color of office. So I'm connecting ninth circuit authority. And I think I'm pronouncing it correctly. Goncalves, I believe it's Portuguese. Um, with the line of circuit cases, Latioles, Baker versus Atlantic Richfield, uh, the case in, um, out of Pennsylvania. Um, they all say the same thing. I mean, the standard is, is different post 2011. And that's why the state AGs and the district courts reliance on Watson is misplaced. But even if under the rubric of Watson and the older standard Goncalves, when you look at the notions of subjugation or subjection rather and control, they are present here. And it's not that Greyhounds playing a game by looking at the complaint and the page declaration, they go together. And I think one of the justices pointed out the bus drivers are at the tip of the spear. The border patrol is enacting. They're exerting their authority. When the Greyhound went to DHS to seek clarification and told them that we don't like what you're doing. They said, you don't have a choice. You need to do it. That's in the removal notice that's in our papers and it's unrebutted. And this factual challenge is non-existent here by the government. The only record evidence before this court is the page declaration and the state attorney general's own pleading. And they're judicially a stop to argue against it. That's the record I think the court asked, I'll close it up here. A critical question. Why do we need to be in a federal forum? Who is not answering the question about what the border patrol did here and what was their statutory authority and how did they impress it on private industry? And the poor folks caught in the middle like Greyhound, the border patrol and department of Homeland Security. And if we're in state court, they won't be joined. They won't show up. They'll assert sovereign immunity. They need to be present. And that's the importance of the federal forum. Thank you, your honor. Thank you both for your argument. And we are in the case of the state of Washington versus Greyhound who submitted it during recess. Thank you very much. Thank you, your honor. Thank you, your honor. This court for this session stands adjourned.
judges: Boggs, Berzon, Murguia